UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                                Criminal No. 1:05-cr-10074-PBS

CHARLES CARRINGTON

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS**

**Introduction**

The defendant, Charles Carrington, was arrested on December 28, 2004, for unarmed bank robbery. Carrington has filed a motion to suppress statements evidence claiming that the statements he gave to law enforcement authorities were not voluntary, intelligent and knowing, and were obtained in violation of the Fifth Amendment to the United States Constitution, and that the police denied him his rights under Miranda v. Arizona, 384 U.S. 436, 467, 473 (1966). This memorandum is filed in support of the defendant's motion to suppress statements.

**Statement of Facts[1]**

On December 28, 2004, at approximately 9:17 a.m., Boston Police Officers Kelly-Chalas and Lamb responded to a report of a bank robbery in progress at the Bank of America located at 315 Centre Street in Jamaica Plain, Massachusetts. A witness at the scene, Jose A. Yurnet, gave Lamb a description of the suspect, describing a bald black male with a husky build. He also described the vehicle that the suspect left in as a truck with Massachusetts registration number 125949, heading toward Hyde Square in Jamaica Plain. Officer Lamb broadcast the description via police radio. Officers Hicks and Fencer, who were on their way to the bank, spotted a white

---

[1] The following facts are derived from police reports, FBI reports, and the tape of the police interview of the

1

box truck with that registration number heading outbound on Centre Street coming from the direction of Hyde Square. The police pulled over the truck and ordered the driver[2] and passenger out at gunpoint, who were then placed into custody and handcuffed.

Officer Hicks observed on the passenger seat, allegedly in plain view, a black jacket with a stack of money inside an open pocket. Sergeant Gifford and Detective Paul Coffey then responded to where the truck had been stopped and organized a show-up identification for a witness, the bank's assistant manager Felizberta C. Monteiro. The defendant was uncuffed and given the black jacket and a knit cap that was found in the left front pocket, and the officers stepped away from him. Ms. Monteiro then allegedly positively Carrington as the man who had robbed the bank. Carrington was arrested and transported to Boston Police District E-13 for booking and interrogation.

The bank teller who was the victim of the robbery, Rosalynd Medina, informed the police that the robber had approached her and stated, "I know you have an armed guard outside. Give me all you hundreds, fifties, and twenties, and hurry up!" A bank customer, Edward Thimas, stated that he overheard the robber say, "Hurry up! Hurry up!" Mr. Yurnet, who had given the description to the police, had given chase to the robber and was able to punch the truck registration into his cell phone before it left the scene.

Carrington was booked at approximately 10:30 a.m. on December 28, 2004. The Prisoner Booking Form indicates a <u>Miranda</u> warning signed by Carrington, which was administered by Officer Ramon Kelly-Chalas, although no police officer signature appears on the form (Exhibit A).

Approximately three and one-half hours later, at 2:00 p.m., Detectives Carmen Rodriguez and Paul Coffey, and Officer Christopher Coffey of the Boston Police, and Special

---

defendant, provided in discovery, and a report submitted by the defendant's expert, Eric Mart, Ph.D.
[2] The defendant was the passenger in the truck. The driver, Alex Hernandez, was originally arrested and brought to the police station and booked. Upon further investigation he was released and not charged.

Agent Tamara N. Harty of the Federal Bureau of Investigation ("FBI"), interviewed Mr. Carrington at the District 13 Station of the Boston Police Department. The interview was audio recorded.[3] Agent Harty read Carrington his Miranda rights and provided him with a written Advice of Rights and Waiver of Rights form, which was signed by Carrington, Harty, and Detective Carmen Rodriguez (Exhibit B). This interview lasted for approximately thirty minutes. During this interview he was asked to describe the events of that morning in detail. Mr. Carrington gave an account of what happened and allegedly admitted to the bank robbery (see attached FBI report dated December 30, 2004, Exhibit C). He also indicated that he had been using crack cocaine for about three weeks. During the interview Carrington was clearly distraught and tearful, repeatedly apologized, and begged for help with his drug problem. Carrington was subsequently indicted in federal court.

### Carrington's Intellectual Functioning

On July 7, 2005, Mr. Carrington was interviewed and tested by Eric G. Mart, Ph.D., a psychologist retained by defendant's counsel. Dr. Mart determined that Carrington's verbal IQ is quite low, and that he is mildly mentally retarded. Dr. Mart also conducted tests that were specifically aimed to determine Carrington's comprehension of Miranda rights. Dr. Mart found that Carrington had a poor grasp of the implications of the right to remain silent, did not understand that as a defendant he has a right to be free from pressure to talk once he tells police that he does not wish to answer questions, and did not understand that there is no penalty for asserting the right to silence and that this right is irrevocable by the judge.

---

[3] It is apparent from the audiotape that at least some conversation between the police and Carrington had taken place prior to the recorded interview at 2:00 p.m.

3

## ARGUMENT

**The Government Cannot Meet Its Heavy Burden of Showing by a Preponderance of the Evidence That the Defendant Voluntarily, Knowingly and Intelligently Waived His Rights Prior To Custodial Interrogation on December 28, 2004**

The Fifth Amendment to the U.S. Constitution provides in pertinent part that no person shall be "compelled in any criminal case to be a witness against himself." The defendant's statements to the police in the present case were made in a custodial setting, the police station, and the defendant had been arrested for having committed a bank robbery. The defendant submits that the incriminating statements allegedly made by him to the police during the interrogation on December 28, 2004 should be suppressed due to the fact that he never knowingly, intelligently and voluntarily waived any of his constitutional rights before making statements. *See generally* United States v. García, 983 F.2d 1160 (1st Cir. 1993); United States v. Fontana II, 948 F.2d 796 (1st Cir. 1991); *see also* Miranda, 384 U.S. at 444; Rogers v. Richmond, 365 U.S. 534 (1961).

It is well settled that a criminal defendant undergoing "custodial interrogation" is entitled to certain procedural safeguards as enunciated in Miranda. *See* United States v. Streifel, 781 F.2d 953, 958 (1st Cir. 1986). It cannot be disputed that, at the time that he was interrogated, the defendant was well within custodial interrogation. Therefore, it must be determined whether the defendant's responses to the officers' questions were made after a knowing, intelligent and voluntary waiver of the defendant's Fifth Amendment rights. Miranda, *supra*.

In determining whether a waiver of Miranda rights has been made by a criminal defendant, the prosecution has a heavy burden "to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to appointed counsel." Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Specifically, the government must prove the knowing and intelligent waiver of Miranda rights beyond a by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). The court is further guided by the "totality of circumstances" doctrine. North Carolina v. Butler, 441 U.S. 369, 374-79, 99 S.Ct. 1755, 1757-60, 60 L.Ed.2d 286 (1979);

García, 983 F.2d at 1169. In performing the analysis to determine the legitimacy of a waiver under Miranda, the court should consider the facts surrounding the particular case, "including the background experience and conduct of the accused." The government must demonstrate the existence of "the intention, intelligently exercised, to relinquish a known and understood right." *Id*. Notwithstanding that a confession be voluntary, the same will be inadmissible if the defendant "lacks the mental capacity to make a knowing and intelligent waiver" of Miranda rights. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140-41, 89 L.Ed.2d 410 (1986).

In the case before this Court, the government cannot prove by a preponderance of evidence that the defendant knowingly, intelligently and voluntarily waived his privilege against self-incrimination afforded to him by the Fifth Amendment of the United States Constitution. Due to the fact that the defendant was not mentally capable of properly understanding the waiver of his rights, he could not have made a knowing, intelligent and voluntary waiver of these rights. *See* United States v. Williams, 952 F.Supp. 67 (D. P.R. 1997); Henry v. Dees, 658 F.2d 406, 411 (5th Cir. 1981).

In the instant case, Mr. Carrington could not have rationally decided to make a voluntary statement because of his limited mental capacity. As a result, his statements made on December 28, 2004, were involuntary and must be suppressed.

## **CONCLUSION**

Based on the foregoing analysis, it is clear that the statements attributed to the defendant were made in violation of the Fifth Amendment to the United States Constitution, as well as the principles enunciated in <u>Miranda v. Arizona</u>.

WHEREFORE, the defendant respectfully prays this Honorable Court allow his Motion to Suppress Statements.

CHARLES CARRINGTON
By his attorney,


 /s/ Mark W. Shea
Mark W. Shea
BBO No. 558319
47 Third Street, Suite 201
Cambridge MA  02141-1265
617.577.8722

# Boston Police Department
## Prisoner Booking Form

Report Date: 12/28/2004 10:36
Booking Status: Unverified
Printed By: Thomas, George C

Booking Name: CARRINGTON
First: Charles
Middle: Lawrence
Suffix:
Home Address: 80 Woodbole AV #164, MATTAPAN MA 02126 US
Sex: Male
Race: Black Non-Hispanic
Date of Birth: 06/24/1966
District: 13
Booking Number: 04-01533-13
Incident Number: 040696424
Arrest Date: 12/28/2004 09:21
Booking Date: 12/28/2004 09:54

Charges: Unarmed Robbery (Bank) (265-19)




## Miranda Warning

Before asking you any questions, it is my duty to advise you of your rights:

1) You have the right to remain silent;
2) If you choose to speak, anything you say may be used against you in a court of law or other proceeding;
3) You have the right to consult with a lawyer before answering any questions and you may have him present with you during questioning;
4) If you cannot afford a lawyer and you want one, a lawyer will be provided for you by the State without cost to you;
5) You may also waive the right to counsel and your right to remain silent and you may answer any question or make any statement you wish. If you decide to answer any questions you may stop any time to consult with a lawyer.

Do you understand what I have told you?
Yes, I understand

*Charles Carrington*
Signature of Prisoner

Informed Rights By Officer:
BPD  11704  Kelly Chalas, Ramon

Signature of Officer

### Prisoner Property

Money: .30        Property Storage No:
Property: watch, belt, wallet, keys, inhaler, knit cap, lip balm

Telephone Used: Yes
Breathalyzer Used: No
Examined at Hospital: No
Examined by EMS: No
Visible Injuries:
none

Acknowledgement of property items being held

*Charles Carrington*
Signature of Prisoner


EXHIBIT A

# ADVICE OF RIGHTS

Place _D-13 Boston P.D._
Date _12/28/04_
Time _2:00 p.m._

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

## WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed X _Charles Carrington_

Witness: _SA Tamara N. Harty_
Witness: _Det Carmen N. Rodriguez_
Time: _2:00 pm_

EXHIBIT
B

FD-302 (Rev. 10-6-95)



- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/30/2004

      CHARLES (CHARLIE) L. CARRINGTON, date of birth ▇▇▇▇56, social security number ▇▇▇▇▇▇53, residential address 80 Woodbole Avenue #164, Mattapan, Massachusetts (MA), was interviewed subsequent to arrest at the District 13 Boston Police Department located at 3347 Washington Street, Jamaica Plain, MA. The interview was audiotaped. Special Agent TAMARA N. HARTY read the FD-395 Advice of Rights form to CARRINGTON, and he signed the waiver. CARRINGTON also verbally agreed that he understood his rights, and wanted to speak with officers regarding the bank robbery on December 28, 2004, at the BANK OF AMERICA located at 315 Centre Street, Jamaica Plain, MA. After being advised of the identity of the interviewing law enforcement officials, CARRINGTON provided the following information:

      CARRINGTON started using crack cocaine about three weeks ago, and has started borrowing money from coworkers and his drug dealer to support his drug habit. CARRINGTON stated that he currently owes his dealer approximately $170.00, and was worried about paying back that subject as well as his coworkers. CARRINGTON emphasized that his coworker, ALEX HERNANDEZ, had nothing to do with the robbery nor any knowledge that he had intended to rob the bank. CARRINGTON said that he looks up to HERNANDEZ and respects him for working hard to support his family.

      CARRINGTON was released from prison in June of 2004, and is currently on federal probation for contempt of court. CARRINGTON had been doing well until he started using crack recently. CARRINGTON said he started taking drugs again because he was bored and was having a difficult time with the responsibilities of his family, including illnesses that his mother has.

      CARRINGTON acknowledged that he had gone to another bank with HERNANDEZ prior to the BANK OF AMERICA, and that he (CARRINGTON) had intended to rob that bank, but it was not open. CARRINGTON said that he made a big mistake robbing the bank, and he felt sorry for the pregnant teller he had robbed and the problems he had caused for HERNANDEZ. CARRINGTON requested help for his drug problem.

Investigation on  12/28/2004   at  Jamaica Plain, MA

File #  91A-BS-94841                              Date dictated  12/30/2004
    BPD Detectives Carmen Rodriguez & Paul Coffey
by  BPD Officer Christopher Coffey, SA Tamara N. Harty/tnh

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;