UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v. Criminal No. 1:05-cr-10074-PBS

CHARLES CARRINGTON

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS DUE TO VIOLATION OF 18 U.S.C. § 4241(d)**

**FACTUAL AND PROCEDURAL BACKGROUND**

Charles Carrington was indicted on March 23, 2005 on one charge of bank robbery, and was arraigned on March 31, 2005. On or about April 28, 2005, United States Magistrate Judge Judith G. Dein entered an order releasing Mr. Carrington to inpatient drug treatment. As a result of the inability to place Mr. Carrington into an inpatient drug treatment program, the previous order setting conditions of release was revoked on August 8, 2005 and the defendant was ordered detained pending trial. During the interim the defendant remained in custody, as the order of conditional release was contingent upon direct placement into an inpatient drug treatment facility.

On September 8, 2005, defendant filed a motion to suppress statements, on the basis that the defendant was not competent to waive his Miranda rights. The Government opposed the motion, and a hearing was held over two days, on October 5 and 21, 2005.[1] As a result of competency issues raised at the suppression hearing, the Government filed a motion for psychiatric exam on January 30, 2006. The Court found that there was reasonable cause to believe that the defendant might be suffering from a mental disease or defect rendering him incompetent to stand trial, and ordered a mental competency evaluation in accordance with 18

[1] The Court's consideration of the suppress motion has been stayed pending determination of the competency issues.

U.S.C. § 4241(b).

A competency hearing was scheduled for March 17, 2006. However, on that date the parties reported that an examiner had not yet been appointed, and the Court ordered the parties to confer and submit a proposed order with the examiner's name to the court. The proposed order was filed and, on April 4, 2006, Thomas G. Gutheil, M.D., was appointed to evaluate the defendant. The evaluation did not occur until July 11, 2006, and a report was subsequently filed.

On July 19, 2006, after a hearing in accordance with 18 U.S.C. §§ 4241(c) and 4247(d), the Court found defendant to be incompetent to stand trial, and on August 3, 2006 committed defendant to the custody of the Attorney General in accordance with 18 U.S.C. § 4241(d). The statute provides that, if the defendant is determined to be incompetent, the court shall commit the defendant to the custody of the Attorney General for a reasonable period of time, not to exceed four months, in order to determine whether "there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d)(1).

The defendant, who was being detained at the Plymouth County Correctional Facility "PCCF"), was not immediately transported to a federal Psychiatric Referral Center, but remained in incarcerated at Plymouth. Defendant's counsel attempted to have him moved to a Psychiatric Referral Center on several occasions. In that regards, the courtroom clerk sent a second copy of the August 3rd order to the U.S. Marshal Service on or about September 18, 2006. Nonetheless, the defendant remained at PCCF. On October 10, 2006, defendant's counsel filed a motion to compel his transfer, which was allowed the following day. On October 26, 2006, the defendant was received at the U.S. Medical Center for Federal Prisoners ("MCFP") in Springfield, Missouri.

The Court held a status conference on November 16, 2006 at which defense counsel argued that the four-month period for evaluation began to run as of the date of the original court

order, August 3, 2006.[2] Counsel for the government maintained that the time period did not begin until Carrington was received at MCFP, namely October 26, 2006. A further status conference was held on February 14, 2007, at which counsel for the defendant orally moved for his release. No report or determination from MCFP regarding the competency of the defendant had been filed by that date. Additionally, no motion or request to permit the defendant's continued hospitalization pursuant to 18 U.S.C. § 4241(d)(2)[3] was filed within four months of August 3, 2006. The defendant maintains that the delay of over eighty days in transporting the defendant in this case was in effect a punitive sanction, and the delay otherwise violated Mr. Carrington's due process rights.

## ARGUMENT: THE DELAY IN TRANSPORTATION VIOLATED DUE PROCESS

### I. Mr. Carrington's substantive due process rights were violated because persons found unfit to proceed have a constitutional right under the due process clause to prompt, restorative mental health treatment designed to restore them to competency.

One of the most basic rights held by those in the United States is the right to due process. The right to due process encompasses issues involving the manner and reason for confinement of pretrial detainees. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979 (1983); Bell v. Wolfish, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861 (1979). Although prison conditions are typically addressed under the Eighth Amendment, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," and therefore the protections under the Eighth Amendment are not sufficient. *See* Youngberg v. Romeo, 457 U.S. 307, 321-22, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28 (1982).

[2] Immediately prior to the hearing, defense counsel spoke with the treating doctor at MCFP by telephone and informed her that he would be arguing that the terms of 18 U.S.C. § 4241(d) limited them to a four-month period for the evaluation, namely August 3, 2006 to December 3, 2006.

[3] The statute provides that a defendant may be hospitalized for an additional reasonable period of time, beyond four months, until "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed. 18 U.S.C. § 4241(d)(2)(A).

Because Mr. Carrington has been found incompetent to proceed with trial and in need of mental health services, he is a pretrial detainee who has not yet been tried and convicted, and, the delay in his transportation must be addressed under the Due Process Clause.

The Supreme Court addressed due process concerns regarding the length of detention in competency cases in Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845 (1972). Jackson held that indefinite commitment of a defendant based on incompetency to stand trial is a violation of the defendant's due process rights. *Id*. at 731. Although the defendant in Jackson had little likelihood of regaining competency, the underlying principles still apply in cases where a defendant is likely to be restored. If the purpose of the confinement is to regain competency to stand trial, and the person being detained is not receiving treatment towards that goal, then that person is being held unlawfully. Such a detention has the effect of punishing the defendant. The Court in Jackson held that a reasonableness standard applies when determining whether a person has been held in violation of due process. *Id*. at 738. The Court specifically said that "even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." *Id*.

In light of Jackson, the Ninth Circuit Court of Appeals held that a delay in transportation of incompetent defendants to a state hospital for treatment violates substantive due process rights. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1121-22 (9th Cir. 2003). In doing so, the court upheld the district court's injunction requiring that the state hospital transport the defendants within seven days of each defendant's finding of incapacitation. *Id*. at 1122. The court laid out an extensive analysis as to why such delay violates the defendants' substantive due process rights. *Id*. at 1107-08. The court looked at the system under which the pretrial detainees were being held and how it may affect them, holding:

> Although jails can sometimes provide treatment to stabilize a patient, they cannot restore a patient to competency. Thus, incarceration in a county jail delays the incapacitated criminal defendant's possible return to competency. The disciplinary system that jails use to control inmates is ineffective for, and possibly harmful to, incapacitated criminal defendants…. Incapacitated criminal

> defendants have a high risk of suicide, and the longer they are deprived of treatment, the greater the likelihood they will decompensate and suffer unduly. These and other undisputed harms, together with [Oregon State Hospital]'s statutory mandate to provide timely restorative treatment, support our conclusion below that OSH's delay in admitting incapacitated criminal defendants violates their substantive due process rights.

*Id*. at 1120. Accordingly, the Ninth Circuit found that the defendants' due process rights were being violated and upheld the district court's order that the defendants be transported within seven days. *Id*. at 1122-23.

As previously stated, Mr. Carrington was in custody at the Plymouth County Correctional Facility for over eighty days before arriving at U.S. Medical Center in Springfield. During that time period, the defendant was not provided any evaluation or treatment relating to his mental condition. As a result he was clearly not making the slightest progress toward the goal of restoration. Moreover, it is possible that the prolonged incarceration without treatment caused further decompensation and undue suffering. It is beyond dispute that the prolonged incarceration was in no way related to the goal of restoring competency. Therefore, under Jackson, Mr. Carrington's substantive due process rights were violated. As a result, he requests this Court to dismiss his case.

**II. Mr. Carrington's procedural due process rights were violated because the provisions of 18 U.S.C. §§ 4241 and 4246 were not followed.**

The treatment of mentally incompetent federal criminal defendants is governed by the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241-47. Section 4241(a) provides that, at any time after the commencement of a prosecution and prior to the sentencing of a defendant, the court shall order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Section 4241(d) provides for the temporary custody of a defendant judged incompetent to stand trial. The section permits federal custody and treatment of the individual for four months,

which Congress deemed adequate to determine the probability that the individual would regain competence in the foreseeable future. The four month limit under 18 U.S.C. § 4241(d)(1) may be extended for an "additional reasonable period" of time if the court makes an explicit finding that there is a "substantial probability" that the defendant will attain the capacity to permit the trial to proceed within the additional time. 18 U.S.C. § 4241(d)(2).[4]

A second section, 18 U.S.C. § 4246(a), provides for the custody of mentally ill individuals who no longer realistically can be considered to be awaiting trial because there is little possibility of their regaining competency.[5] However, federal custody is permitted under § 4246(a) only after efforts have been made to obtain placement in a state institution for the individual and the efforts have not succeeded.

Carrington's confinement is not in compliance with the provisions of § 4241. He has been in the custody of the Attorney General since August 3, 2006, the date of this Court's order of commitment. *See* United States v. Trillo-Cerda, 244 F.Supp.2d 1065, 1068 (S.D. Cal. 2002) (defendant was "hospitalized" for purposes of determination, in civil commitment proceedings, as to whether he presented a substantial risk of danger, even though he was not currently physically confined in treatment medical center). Moreover, the Bureau of Prisons own policy states: "Time frames for completion of forensic evaluations are specified in statute; strict

---

[4] 18 U.S.C. § 4241(d) provides as follows: If [after a competency hearing], the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility –
(1) for such a reasonable period of time, *not to exceed four months*, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and
(2) for an *additional reasonable period of time* until –
(A) his mental condition is so improved that the trial may proceed, *if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed*; or
(B) the pending charges against him are disposed of according to law;
*whichever is earlier*.
18 U.S.C. § 4241(d) (emphasis added).
[5] The section also provides for the detention of other individuals who are no longer awaiting trial (for example because they have already served their sentences). The provisions are not relevant here.

adherence to established time frames is required. Time frames specified by statute are for custody of the inmate. Therefore, unless otherwise specified in the court order or unless the inmate is not in custody prior to arrival at an institution (i.e., a self-surrender), the time of the evaluation begins on the date the court order is signed." Bureau of Prisons Psychology Services Manual, Program Statement 5310.12, ch. 9 at 3, available at www.bop.gov (first emphasis in original, second emphasis added) (Att. A).

Thus, Carrington has been in the custody of the Attorney General for over six months. However, § 4241(d)(1) normally cuts off custody after four months. There has been no finding by the Court pursuant to § 4241(d)(2) that there is a substantial probability that Carrington will attain a level of competency within an additional reasonable time so as to permit the trial to proceed, and no request for additional time has been made. Thus, Carrington is not properly in custody under either prong of § 4241. *See* United States v. Baker, 807 F.2d 1315, 1320 (6th Cir. 1986) (18 U.S.C. § 4241(d) "requires that a determination as to the individual's mental condition be made within four months, and … the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time.").

Congress has provided that, after the expiration of the time limit set by § 4241, federal custody can only be continued if efforts are first made to find a state treatment facility for the individual. 18 U.S.C. § 4246(d). Section 4241(d) concludes with the following: "If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246." As discussed above, no such determination was made at the end of the four-month time period. Thus, Carrington is not subject to the provisions of § 4246.

The noncompliance with the statute is not a mere technicality – it is directly contrary to Congress' command. In Jackson, *supra*, the Supreme Court faced the general issue of committing those found incompetent to stand trial. While it rejected indefinite commitment, it

upheld in principle commitment for a "reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain that capacity in the foreseeable future." Jackson, 406 U.S. at 738, 92 S.Ct. 1845. The present statute "is self-evidently built upon Jackson, Congress having concluded that four months fell within the concept of a 'reasonable period.' *See* S.Rep. No. 98-225, at 236 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3418." United States v. Filippi, 211 F.3d 649, 652 (1st Cir. 2000). Mr. Carrington's procedural due process rights were violated. As a result, he requests this Court to dismiss his case.

**III. The violation of Mr. Carrington's due process rights is grounds for dismissal.**

This Court must use a balancing test to weigh the government's interest in confinement against the liberty interests of those who are involuntarily held by the government. Youngberg, 457 U.S. at 320, 102 S.Ct. at 2461. The delay in this case was unreasonable and unjustified. Mr. Carrington sat idle in a jail cell for over eighty days. Mr. Carrington was essentially punished for being incompetent. The delay not only prolonged his loss of freedom, but it also has prolonged his wait for the ultimate resolution of his case.

In addition to the inexcusable and unreasonable delay in transporting him to MCFP pursuant to this Court's August 3, 2006 order, the case has faced numerous other delays. Defendant filed a copy of a psychological report under seal with this Court on October 3, 2005, which raised competency issues. Testimony regarding the conclusions of the report was taken on October 21, 2005. Three months later, on January 30, 2006, a motion was filed by the Government for a psychiatric exam. This motion was allowed on January 31, 2006. Nonetheless, no expert was appointed until April 4, 2006. Thereafter, the court-ordered examination did not occur for an additional three months. The order of commitment issued two weeks later, and the defendant was not transported, as directed in the order, for over two months. Thus, over one year passed from when the Government was first put on notice that there were competency issues to the defendant first being seen at MCFP. Moreover, counsel

for defendant specifically addressed the four-month period with the treating doctor at MCFP, over two weeks before the four-month period elapsed. The facility was free to request additional time pursuant to 18 U.S.C. § 4241(d)(2), yet chose not to do so.

Defendant is not hereby arguing that the four-month time period of 18 U.S.C. § 4241(d)(1) began earlier than August 3, 2006. Neither is he seeking to cast aspersions on anyone involved in the case. He brings these delays to the Court's attention solely to show that his liberty interests have been impacted above and beyond the unreasonable failure to transport, and that he has not been sitting on his rights waiting for the requisite time period to elapse. *See* United States v. Vasquez, 918 F.2d 329, 333 (2nd Cir. 1990) (finding "serious institutional error" in a ten-month delay between defense counsel's first request for a psychiatric examination to when the court finally received the government's report from the Butner correctional facility evaluating defendant's competency) (Speedy Trial Act challenge). Consequently, dismissal is a reasonable and appropriate remedy and will put the government on notice that such delays cannot be tolerated in our system of justice.

**CONCLUSION**

Based upon the foregoing arguments, Charles Carrington respectfully requests that this court dismiss the case with prejudice and enter an order for his immediate release.

Respectfully submitted,
CHARLES CARRINGTON
By his attorney

/s/ MARK W. SHEA Dated: February 21, 2007

Mark W. Shea
BBO No. 558319
Shea, LaRocque & Wood, LLP
47 Third Street, Suite 201
Cambridge MA 02141-1265
617.577.8722

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 21, 2007.
/s/ Mark W. Shea
MARK W. SHEA

U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5310.12
**DATE:** August 30, 1993
**SUBJECT:** Psychology Services Manual

1. PURPOSE AND SCOPE. To establish operational policy, procedures, and guidelines for the delivery of psychological services within the Bureau of Prisons. The Psychology Services Manual is a concise, yet comprehensive set of operational guidelines for the practicing psychologist in the Bureau of Prisons. It is designed to serve as a training device for psychologists new to the Bureau as well as a ready reference for more experienced Bureau psychologists. This Manual is periodically updated to reflect the rapidly changing nature of professional psychology within a correctional setting.

2. DIRECTIVES AFFECTED

a. Directive Rescinded

P.S. 5310.8 Psychology Services Manual (09/16/87)

b. Directives Referenced

| | |
|---|---|
| P.S. 1070.02 | Research (09/25/81) |
| P.S. 1210.10 | Management Control and Program Review Manual (12/23/91) |
| P.S. 1232.03 | Personal Computers (06/15/90) |
| P.S. 1237.07 | Computer Security (06/15/93) |
| P.S. 1351.02 | Privacy Act of 1974 (09/25/75) |
| P.S. 1351.03 | Automated/Personal Record Data Security (05/17/88) |
| P.S. 1353.01 | Release of Records (05/29/75) |
| P.S. 1353.02 | Record of Information Release Form BP-171 (12/11/75) |
| P.S. 2100.01 | Budget Manual (03/01/66) |
| P.S. 3000.01 | Personnel Manual (10/01/84) |
| P.S. 3420.06 | Bureau of Prisons Standards of Conduct and Responsibility (01/05/91) |
| P.S. 3792.03 | Employee Assistance Program (EAP) (01/08/88) |
| P.S. 3932.02 | Correctional Counselor Training and Reference Guide (04/12/93) |
| P.S. 5070.07 | Study and Observation Report (08/12/92) |
| P.S. 5270.07 | Inmate Discipline and Special Housing Units (12/29/87) |
| P.S. 5290.07 | Intake Screening (07/20/92) |

For psychologists assigned to the Forensic Assessment Program, the requirements for licensure, experience, and independent functioning qualifies these positions to carry a grade of GS-13. As much as possible, this position should be used for the purpose of providing forensic evaluations, but may be used in other Psychology Department activities if time and workloads permit.

(3) Training

Before being assigned as a forensic evaluator, each clinician must be able to demonstrate basic forensic training and experience or work under the direct supervision of someone who has it. The Central Office Psychology Administrator will be responsible for scheduling training sessions on an as needed basis to enhance and update forensic skills for evaluators.

In an effort to further enhance the training and supervision offered to forensic clinicians, a system of mentorship has also been established for clinicians located at sites without an experienced forensic evaluator. Under this mentorship system, psychologists new to the forensic assessment process will be linked with a more experienced forensic psychologist at another study site. Clinicians are encouraged to seek regular professional consultation with their mentor and forward sample reports for review until such time as both the clinician and mentor agree that this review process is no longer necessary.

**C. FORENSIC EVALUATION TIME FRAMES**

Time frames for completion of forensic evaluations are specified in statute; strict adherence to established time frames is required. Time frames specified by statute are for custody of the inmate. Therefore, unless otherwise specified in the court order or unless the inmate is not in custody prior to arrival at an institution (i.e., a self-surrender), the time of the evaluation begins on the date the court order is signed. The final day of the study is the day on which the Bureau of Prisons must be ready to relinquish custody of the inmate. To accomplish this, it is essential that the evaluator, through the ISM Department, be proactive in notifying the U.S. Marshals Service in a timely fashion so that they may pick the inmate up on that day. All evaluative contact with the inmate, including interviews, testing, etc., must be completed at that time so the inmate may be transported. However, that date does not reflect the time in which a report is due in court. Statute does not specify a limitation on this. Ordinarily, however, the report should be forwarded not more than two weeks after the final date of the study.